and we will go on to case number two. In that case is 21-2793 Joseph Hero v. Lake County Election Board. Good morning. Good morning Judge Roebner. Good morning. May it please the court. The district court erred in concluding that Mr. Hero's claim for injunctive relief is not justiciable. In election cases, courts routinely allow injunctive claims based on the likelihood of future harm in subsequent elections. And as the Supreme Court has made clear in Lyons and its progeny, a plaintiff can show an injunctive claim remains active if the plaintiff shows that he's likely to suffer the same harm again at the hands of the defendant. These are precisely the circumstances Mr. Hero faces. Of course at one point in your brief you stated that Mr. Hero desires to run as a Republican candidate for the St. John Town Council or another local office. That's your opportunity by including the possibility of another office, another local office. Does that indicate that he is not yet committed to running for a certain position? And if not, is his decision as far as running for office still speculative? Judge Roebner, I agree we did indicate that he would seek to run for the St. John Town Council or another office. As you may have seen, Mr. Hero has a lengthy history of running for election as a Republican and holding office as a Republican. And that's merely to say he does certainly intend to run for St. John Town Council in May of 2023. But if he's unsuccessful in that run or if another office may strike his fancy, he would certainly not want to foreclose any of those possibilities. So here's my issue with this. Suppose you're right and that this is at least concrete enough and imminent enough and all the rest of that to satisfy Article 3. I don't see anything that prevents Mr. Hero from running for any public office he wants to run for. What I see is this letter that says you can't do it I think of cases such as Boy Scouts of America against Dale and your position seems to be that he can force the Republican Party to allow him to be their standard bearer. And that seems actually quite contrary to the law that the Supreme Court has enacted. He certainly can run as an independent, he can run as a write-in, so he has access to the ballot. And I would suggest that that's Murkowski from Alaska being a great example. So I'm not sure where you can go even if we gave you the standing point. Well unfortunately for Mr. Hero, Judge Wood, he can't run as an independent or a write-in candidate under Indiana law. I don't read Indiana law that way. If he says, I love the Republican Party, they represent all of my views, I consider myself a Republican, that doesn't mean his name gets to be printed on the ballot, if there's a paper ballot, you know, under the line Republican. And that's what can't happen, that's what Indiana law says can't happen. But he can praise the Republican Party to his heart's content. But unfortunately for Mr. Hero, under Indiana law, the definition it provides of affiliate, which is the term that he must use to attest that he's unaffiliated with a political party, has two prongs. One is you are sort of the anointed certified candidate of the party, and the other is that in the past two, in the most recent iteration of the statute, in the two most recent primary elections in which you voted, they were for that party. And that is Mr. Hero. So as a matter of Indiana law, he is a Republican, I think that only applies to some offices, though. I'm not sure it applies to this town office that he's talking about. You're correct, Judge Wood, that that language applies in the portion of the statute dealing with primary elections, but the statute doesn't provide another definition of affiliate for any of these purposes. But why should we construe the statute in a way that's more likely unconstitutional than in a way that protects his right to run for town council as an independent? There's, you know, the sore loser law says, you know, he can't run as a Republican in the primary, lose, and then go and run as an independent. But if he just stays away from the primary altogether, it doesn't apply to him. Well, we certainly, it's certainly the case that that Indiana statute allows individuals to run, to seek nomination in a primary, who are not the anointed or preferred candidate of the Republican Party. But why can't, if he really wants to run and there's this policy in place, this 10-year ban, why isn't the answer, don't run in the primary, just run as an independent candidate in the general election, or as a write-in candidate, and take your chances? For Mr. Hero, the answer is, he's not an independent candidate. He is a Republican. But he isn't, according, see, this gets back to the Dale point. He can express his agreement with everything the overrule Dale. They don't have to accept him as a Republican. So, Judge, I don't think that there would be any necessity to overrule Dale. Not that we could, by the way, but anyway. Certainly, and not that we would suggest that, certainly. But I think we can look at any number of election law cases to give us the answer to that question, the most obvious being Lopez Torres. If the answer to the question was, the Republican Party can hand-select anyone that it wants to say yes to or no to, the Supreme Court wouldn't have bothered going through the lengthy analysis, and ultimately concluding that once a state gives the political party a role in the electoral process, some of that party's associational interests must yield to the valid electoral scheme. But suppose, I'm sure this is not at all what Mr. Hero is planning on doing, but suppose Mr. Hero takes a look at the Republican platform, and let's just suppose for the sake of discussion that the Republican platform says, we support laws forbidding transgender people from participating in athletic programs that correspond to their chosen gender. And Mr. Hero says, that's outrageous. You know, I don't think that's true. And he plans to campaign and say, I don't agree with this plank of the Republican platform. Under all the law that I can think of, the party can say, you know, it means something to be a Republican. It means that you are willing to defend these parts of the platform, and you aren't completely excluded from the ballot. And, you know, you have Supreme Court decisions, even Lopez Torres, which you're saying your interests in running are protected as long as you have the opportunity to show up in the general election ballot. There's the 11th Circuit's David Duke case. So, where are we? There's so many things I'd like to say in response to that, Judge, and I'm sorry for the lengthy response. So, I'll start by saying, I don't read any of those Supreme Court decisions as establishing that, in this instance, Joe Hero can't self-identify as a Republican. And the first thing that for me... But self-identify as a Republican means you think he has a right to have his name printed on the ballot under the word Republican. And he can, because you would, we both would agree, he can self-identify as a Republican from now till the cows come home, as long as it's not printed on the ballot. That's right. But even the Supreme Court's decision in you, which comes out, obviously, in a way that's not on a macro level, hugely supportive of Mr. Hero's claim. Part of the reason why the party's amendment rights were so important in that case is, as the Supreme Court said, some candidates and primaries will not adhere to the party's tenets. The Supreme Court assumes that some candidates for office are not only going to fail to be the anointed candidate of the party, but will actually, potentially, be anathema to the party. And again, if that weren't important, the Supreme Court's analysis in you would have been entirely different. And I would also point to... What in you says the party has to do it that way? The court is saying, you know, primaries are great to resolve intra-party feuds, but what in you says they have to take people who are, who hold views and maybe they're pro-life, and the Republican Party is very much pro, you know, I'm sorry, maybe they're pro-choice, and the Republican Party's deeply committed to a pro-life position, and they feel like the whole brand is going to go down the tubes if we allow these people to be our standard bearers. Of course, that's the risk in any system where we, where states have chosen primary elections, potentially primary elections that are open, semi-open, as the process for choosing the standard bearer. The primary difference that I should underscore here is that the Indiana to be considered a Republican for purposes of seeking nomination. This might be a different case if the Republican Party said, you can't run as a Republican if you have supported independent candidates or, or list any, any number of hypotheticals. So you're saying that this letter that he got has no legal force? The letter that he got was not, was not issued pursuant to any Republican Party rule. There was no, there's no, therefore there's no way to challenge that determination, and the letter itself purports only to speak on behalf of the Indiana Republican Party chairman. So if the board is permitted to adopt this letter as its formal position as to who may seek office in Indiana, seek nomination in a primary ballot, then all of Indiana's local election boards are going to be required to adopt the stated position of political party leadership. And certainly none of the Supreme Court's cases can be taken to that extreme, and certainly the, the cases at a minimum acknowledge that there are some ways that a party could choose to, to select its standard bearers that would violate the Constitution. The parties simply don't have carte blanche to do that. And, and of course the, the easiest example of, of cases of this nature are the anti-fusion statutes that the Supreme Court has said in Timmins states can pass. Now of course those are very restrictive of a party's associational rights, and nonetheless the, the Supreme Court has said those types of limitations can certainly be placed on who, on who the party elects as its standard bearer. So, so in our view there, there's nothing even remotely problematic about Indiana's statute. Holding that, holding that Joe Hero has the right to go on the ballot as a Republican in no way suggests that Indiana's electoral law is unconstitutional, and indeed the, the election board has never taken that position during the course of this litigation. And certainly as you may have noticed in the, in the transcript of the election board hearing, exactly these arguments were made by Mr. Hero, who is an attorney, in front of the election board when, when his candidacy was challenged. The parties have spent a lot of time arguing about the Anderson verdict framework and application. Does that even apply here at the primary stage when we're talking about the actions of a, one of the political parties being involved to keep him off the ballot? I do believe that it does apply in the, in the primary context. It, because it applies in any circumstance where a person is alleging a violation of their First and Fourteenth Amendment rights in the electoral context. Although here, what, what we contend is that it's, it's actually a distinction without a difference in terms of the verdict framework, because under any standard of review, even if it's, even if it's not heightened scrutiny, the board's actions simply cannot be justified. There is, they, they have no legitimate interest in violating Indiana's valid electoral statute in order to implement what it perceives to be the preference of the Indiana chairman of the Republican Party. Okay. Thank you very much. You, I will give you some rebuttal time. Thank you, Judge Rupner. Hi, Ms. Brandenburg. Good morning, Your Honors, and may it please the court. There are two key reasons Judge Damon Lichte's decision to dismiss this case at the district court level should be affirmed. First and foremost, there is no live case or controversy, so the matter was properly dismissed for lack of jurisdiction. But isn't there a little bit of a heads-we-win, tails-you-lose, you know, aspect of this? If he waits all the way until the time when signatures are being collected, he's in a very compressed time frame to get everything teed up through the courts, resolved, etc., by the time they start printing the ballots. The, you know, the end date isn't actually necessarily election day. It's sometime before that. And here, he's about eight months or so, less than a year before these 2023 elections, and so he's, you know, how can he be too early and not too late? You know, it seems to me they're unlike, for example, the Lyons case, where no one knew if chokeholds were ever going to be used again and all the rest of that. This looks quite concrete to me. Well, there's two aspects of it, and I agree with Your Honor that there is a possibility, although a number of contingencies would have to occur in order for that to happen, that would put him in the same position that he's in now. So we have that aspect of the capable of repetition. But even if this matter is capable of being repeated, what Judge Lichte focused on, and I think it was a very important point, is that it is not evading review. This case is much more like the Tobin for Governor versus Illinois Board of Elections, where in a decision in Illinois related to taking someone off the ballot, much like we have here, and the potential for even an election board procedural mistake. Now in that instance, Illinois also had a law, just as Indiana has, that permits for the subject of a board decision to challenge that decision. So does the Indiana law provide for expedited proceedings in these matters? Well, there's the potential for preliminary injunction. There's at least a 68-day period in which Mr. Hero would have. So even if he does the same thing he did before, which is tries to run as a Republican in 2023 in the May primary, and even if the board, which will be constituted by different board members, and which will be advised by different attorneys, myself being one of them, I was not an attorney at the time this initially happened, there are a number of factors that could be different. He would also have to still be challenged by a member of the Republican Party, like Chairman Durnell, who challenged him in 2019. Even if all of these things happen, he still has 68 days before the primary, and he has 30 days per the Indiana statute to challenge the board's decision, which importantly gives Indiana the chance that it's never had to look at its state law and determine for the first time, which has never happened here, if the election board even got it right or wrong in the first place. But there's no guarantee in the statute of expedited... I'm sorry Judge Roe, go ahead. No, no, no, you, you, please follow up. No, it was just, the one thing that concerns me, he can try to do all of these things, but if the state courts sit on it, then all of a sudden he's in the same position again. Some states do have expedited procedures where a ruling is promised within a certain number of days. That is true, Judge, and Judge Lichty did also note, quote, Mr. Hero can, quote, return promptly to this court to obtain a preliminary injunction. So he could return to the district court as well. He has two potential avenues for challenge, neither of which he took up initially. Instead of making that challenge within 30 days to the district court or through the federal court, he waited until late August to file this complaint for the first time, seeking declaratory relief as to his future rights. How would you distinguish this case from Gill, where in Gill we found that there was standing because he had expressed his intent to run for office at the next cycle? I believe that Gill involved ballot access related to signatures. It did. And in cases where the signatures are the issue and there's a compressed timeline in order to obtain those signatures, it's a very different situation than what we have here, where we have an individual, Mr. Hero, who has run afoul of the Republican Party's internal rules because of particular conduct he has undertaken for himself, he has chosen to undertake. He acted against the party's rules, and this is why he was banned. So I think that's an important distinction as well, that this isn't a circumstance where he was prevented from ballot access because of some improper or discriminatory reason or because he's a member of a protected class. This is because of actions he undertook that go directly against the party's rules. But those I'll get it in eventually. Because I want to go back to the capable of repetition yet evading review exception, which, you know, you're arguing doesn't apply here because the 2019 decision by the board doesn't control Hero's prospective candidacy for the 2023 election. But is it the argument that the board may change its mind or that the Republican Party might rescind the ban itself based on nothing but, you know, sort of pure speculation? I mean, absent, oh boy, absent some indication that either of those changes are remotely possible, shouldn't we take the facts as they exist? And that would mean, as we are here today, that the ban remains in effect for 10 years, and that the election board believes itself bound by that ban. Yes, Your Honor, it is possible that this issue is capable of repetition. However, I continue to contend that there are too many contingencies, even in that possibility, because of some of the points that Your Honor so aptly raised, such as the board being comprised of different people, and the force that's external to all of this, which is that someone has to actually challenge Mr. Hero. How can we know whether the Republican Party, whether, you know, potentially it doesn't have its act together and challenge him again? The board of elections will only consider potentially removing Mr. Hero from the ballot if a challenge is raised pursuant to Indiana statute. So the letter wouldn't be sufficient alone to remove him? No, the board does not undertake to remove individuals from the ballot unless a challenge is made. It doesn't academically, just as this court wouldn't academically look at a case that wasn't a controversy. But does a challenge have to come from somebody running against him as opposed to the Republican Party? There are rules related to who has proper standing to bring such challenges. It can be a voter of his district. It can be a member of the Republican Party's leadership, such as Mr. Durnel has occurred here. So it wouldn't have to be somebody running against him? Correct. It could be the Republican Party itself sending another letter? Correct. Okay. Well, the Republican Party, if it simply sent a letter, it would have to go through the formal mechanism of challenging him as it did in 2019, which is speculative in and of itself. But the other aspect of this is that we still have to, even if we concede the capable of repetition aspect, we still have to have the evading review portion of this. And this doesn't evade review. There is an avenue, two avenues, in fact, as Judge Lakey aptly pointed out, for review. The fact that that wasn't undertaken is something that should give this court pause, ask to the jurisdiction because it can be reviewed. The other issue that I think is important here is that Mr. Hero has never attempted to run as an independent. So his contention that he has been completely banned from ballot access, which is his claim that supports that he contends he has a severe restriction of his constitutional rights, has never been attempted. But you know, I understand him in a sense to be making a forced speech sort of argument. If the best way, if the only way he can get on the ballot is through the opportunity to run as an independent, he's being forced to say that he's not affiliated with a party. He says that he is a lifelong Republican and he is indeed affiliated with the Republican Party, whether they want him or not. And so it strikes me as a type of forced speech problem. If his conscience dictates that he cannot say other than that he is a Republican because of his subjective beliefs, he does not have to run as an independent. In order to run as an independent party, in order to not run afoul of Indiana's laws. So he did say, I mean, he could be on that ballot with a Democrat, a Republican, and he's the independent. And then in parentheses, I espouse every Republican part of, I am, you know, I am the most ardent Republican that has ever, you know, walked the face of Indiana. He could do that. I think he can say absolutely anything he wishes to say in the course of his campaign. There's no limitation upon his ability to do that. I'm not talking about the campaign. I'm talking about the ballot itself. Could there be parentheses with, by the way, in actuality, I am a Republican. There would not be a provision to permit for that kind of speech on the ballot. The ballot is constrained in its form. However, he certainly would not have his individual speech constrained. And so his yard signs could say Joe Hero, ardent Republican. Right. He can make claims regarding his personal affiliation. But as Judge Woods, as you were so appropriately concerned about, and with your questions to opposing counsel, he isn't able to force an association with a party that doesn't want to associate with him. And I think when, you know, when we look at the Yu case, and that's the case that Mr. Hero cites for the prospect of primaries being the right place to resolve inter-party feuds, that case and the context was so different. That involved a California law that attempted to prevent the parties, the four parties of California who adamantly object to the law, from being able to speak out about their own party representatives and standard bearers in the course of the primary discussion. And the court, the Supreme Court said, what a paternalistic outlook on speech. If the parties wish to malign certain candidates within their own party, whether that be good taste or poor judgment, it is not the court's place or the state's place to prevent them from doing so. Let them have those squabbles. This was in the context of free speech, though, not ballot access. So a very different context. The line of cases that support the freedom to associate, such as Boy Scouts v. Dale and such as, I'm sorry, the Democratic National Party v. Wisconsin ex-rel Volette, I think are much more instructive in assisting the court. And those stand for the is critical to the party itself. They found this with respect to political parties. It has to entail both the right to associate freely with whom you choose, but that also has to include the right not to associate. What about the application of the Anderson-Burdick standard here? The cases that talk about that all pertain to the general election. I haven't seen any talking about the primary election or any that kind of battle, put these two rights of association or two First Amendment rights against each other. Right. Well, the balancing analysis there is simply that if there's a severe burden found, that that is the time and place for strict scrutiny analysis. But in the context of the vast majority of Supreme Court analysis, where there has been a rational and appropriate state interest in governing with respect to electoral laws, including preventing factionalism, including preventing party splintering, the courts have consistently found that there is no severe restriction on the individuals who have contended that their constitutional rights have been violated. And one thing that I found very interesting in the 1972 U.S. Supreme Court case is that in that case, we had an individual in Hawaii who was contending that his rights were violated when he could not write in a vote on the ballot. And he contended that Hawaii had a law that prevented this. Before the Ninth Circuit took the issue up, it wanted the Hawaii Supreme Court to look at the law and actually address whether the law in fact did what the petitioner claimed it did. That hasn't happened here. Indiana has never had the opportunity to look at its own laws and determine whether or not the board even got it right. There are so many, and that takes us right back to standing, Your Honors. And I apologize, my time has lapsed. Are there any further questions? Does anyone want to ask one more question, or then we will free you. Thank you. Thank you. Thank you, Your Honors. Okay. Okay, so here's the situation, Ms. Pector. You have about a minute and a half left. We'll add three minutes to that. Thank you, Judge. I'll be as speedy as possible, although I wish I weren't having to, because this is so much fun. I could do this all day. You're the first person in the history of the court ever. So I just wanted to make a few clarifying points after counsel gave her presentation. First, I just want to make a point of clarification on Indiana law. Mr. Hero actually doesn't have to be challenged at all in order for the board to act on his declaration of candidacy. Indiana law actually requires the board to act if it believes that there's any irregularity or unlawful behavior happening on the ballot. And because the board has taken the position here that to put Mr. Hero on the ballot would constitute providing inaccurate or misinformation to voters, we have, I think, a very reasonable expectation that the board certainly could and would act without the filing of a challenge by a voter in the district. The second thing that I would highlight is that the board is a defendant here. If they've changed their mind about the application of the letter purporting to ban Mr. Hero from office, it can say so right now. We'll pack up and go home. We don't need to go any further, but the board hasn't said that. So I think to Judge we absolutely are and should take the facts as they exist in front of the court right now, which is that when Mr. Hero files his declaration of candidacy, he'll again be removed from the board. That addresses the capable of repetition, but what about the evading of review? The evading review standard, I think the cases are clear that evading review means you can't litigate the case to final judgment before. And I don't know why that's the case here because any reasonable expedition of proceedings would complete a round of litigation in time for the printing of the ballots. We get a round of those cases every time there's a midterm or a general election. I agree that it might get us through a preliminary injunction, which would solve the problem of this election. However, if Mr. Hero were not successful in seeking office in that election and wanted to run again in 2024, the 10-year ban letter remains in effect through 2026. It's still a live case, though, because if it's just a preliminary injunction, then it's still unresolved before whichever court you go to, a state or a federal court. That's right. And so I think then the other question is, okay, is this a case that's better viewed through the lens of Lyons, through a rightness lens where are we sure that the same behavior is going to be repeated again to the plaintiff through no fault of his own? And here, I think quite clearly the answer is yes. And Judge Wood, I wanted to pick up on a question that you asked, which is this looks a lot like a forced speech instance. We completely agree. I think often those forced speech cases are sort of subsumed within these types of election challenges. And I think the court spoke really clearly to this in Tashian, where the court said any interference with the freedom of a party's association is simultaneously an interference with the freedom of those who would seek to- But how do we marry that with Dale? Because we have an entity and maybe the political parties once upon a time didn't want communists as their members, or maybe they don't want various other undesirables as their members, no felons allowed or some such thing. I can think of hypotheticals, but surely the Republican Party as an entity, just as the Democratic Party or the Green Party or anybody else party, has the right to say we don't want our name associated with you. I wish I had a better answer for you, Judge Wood, except to say elections are different. The election cases- But the Supreme Court hasn't distinguished them that much. I think just the fact that the cases unfold the way they do with a degree of lengthy exposition about factoring in these different interests, the fact that you have being fundamentally different. The other thing- You think there can be forced association if it's a political party. That's what you're arguing. I think what the Supreme Court has said is that forced association truly is a problem. We know that it's a problem when it involves the internal workings of a party. That's clear. Luckily, that's not the circumstance we have here because the Republican Party's internal rules say that Mr. Hero is a Republican for purposes of running in a primary. To the extent that the court has concerns about specific precedent being set here that goes beyond the bounds or strays into topics that the Supreme Court hasn't addressed, I truly don't believe that's an issue here. Underscored with that is the fact that no one has challenged Indiana's electoral scheme as being unconstitutional. The final point I'd like to make, if I may, is to the question that Judge Saini has asked about whether Gill is distinguishable, and the answer is no. This is the same circumstance, and it's the same circumstance because the election board has essentially adopted this letter as what would be the equivalent of an election statute in the signatures context. Well, I thank- We thank both of you for a very interesting and well-argued case, and since it's so much fun here, we hope you'll all come back, and the case will be taken under advisement.